# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**DECARLOS JENKINS**                                                             **PETITIONER**

**v.**                            **No. 2:09CV167-P-S**

**STATE OF MISSISSIPPI, ET AL.**                                      **RESPONDENTS**

## MEMORANDUM OPINION

DeCarlos Jenkins, an inmate confined to the Wilkinson County Correctional Facility, seeks federal *habeas corpus* relief under 28 U.S.C. § 2254. He challenges his conviction and sentence in the Circuit Court of Coahoma County, Mississippi. For the reasons set forth below, the petition for a writ of *habeas corpus* will be denied.

## Fact and Procedural Posture

On the night of October 11, 2006, Clarksdale Police Department and Mississippi Bureau of Narcotics officers conducted a search pursuant to a search warrant. Officers entered a residence at 451 Garfield Street, Clarksdale, Mississippi, where they discovered DeCarlos Jenkins. He ran through the house and into the kitchen, where officers apprehended him. Upon a search, an agent found cocaine and marijuana in the pocket of a grayish button-up shirt Jenkins was wearing. Another officer took a picture of the inside of his pocket, which depicts those substances.

After Jenkins arrived at the county jail, his clothes, including the gray shirt, were taken from him and placed in an inmate bin. At trial, the shirt was introduced into evidence as the State's exhibit 11. At trial, three officers testified that Jenkins was wearing that shirt, exhibit S-11, the evening he was arrested.

On February 2, 2007, Jenkins was convicted of one (1) count of possession of cocaine and one (1) count of possession of marijuana in the Circuit Court of Coahoma County,

Mississippi. The circuit court postponed sentencing. Shortly after his conviction, Jenkins escaped from custody at the Coahoma County Jail. Because Jenkins voluntarily left the custody of the sheriff's department, the circuit court found that he waived his right to be present for the sentencing hearing.

On October 9, 2007, the court held the sentencing hearing, at which State presented evidence that Jenkins had, from two different prior incidents, been convicted of a robbery and of possession of a firearm by a convicted felon. After receiving the State's evidence, the circuit court sentenced Jenkins to life in prison as a habitual offender.

Jenkins filed an appeal of his convictions and sentences in the Mississippi Supreme Court, making the following claims:

> **Ground 1**: Insufficient evidence to support the verdicts.
>
> **Ground 2**: Verdicts against the overwhelming weight of the evidence.
>
> **Ground 3**: Error of trial judge in admitting S-11 without sufficient chain of custody.
>
> **Ground 4**: Trial court improperly sentenced appellant in absentia.
>
> **Ground 5**: Jenkin's life sentence constituted cruel and unusual punishment.
>
> **Ground 6**: Trial judge committed reversible error in granting an abstract instruction on examples of direct and circumstantial evidence.

On July 29, 2008, the Mississippi Court of Appeals affirmed the judgments and sentences of the circuit court. *Jenkins v. State*, 997 So.2d 207 (Miss. App. 2007), *reh'g denied* Dec. 2, 2008 (Cause No. 2007-KA-00399-COA). Jenkins then filed a *pro se* petition for a time extension to file an application for certiorari which was granted. However, the records of the Mississippi Supreme Court Clerk show that an application for certiorari was never filed with that court.

On April 3, 2009, Jenkins filed an Application for Leave to Proceed in the Trial Court with a motion for post-conviction relief ("PCR") in the Mississippi Supreme Court, raising the following issues (*pro se*):

  **Ground 1**: Ineffective assistance of counsel.

      1. Failure to call witness.
      2. Failure to investigate.
      3. Failure to object to comments in closing argument.

  **Ground 2**: Trial judge erred in amending the indictment.

  **Ground 3**: Trial court erred in allowing state to present S-11 as evidence without petitioner's right to confrontation.

  **Ground 4**: Trial court erred in denying petitioner's right to effective assistance of counsel after petitioner claimed conflict of interest.

On May 6, 2009, the Mississippi Supreme Court denied the application, holding "the panel finds that the application fails to make a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27(5)." Miscellaneous Pleadings, Cause No. 2009-M-00539.

On September 25, 2009, Jenkins filed the instant petition, in which he raises the following issues (*pro se*):

  **Ground 1**: The evidence was clearly insufficient as charged in the indictment.

  **Ground 2**: Trial court erred in finding the verdict was not against the overwhelming weight of the evidence.

  **Ground 3**: Trial judge erred in admitting S-11 without a sufficient chain of custody.

  **Ground 4**: Trial court improperly sentenced Jenkins in absentia.

  **Ground 5**: Jenkins' habitual offender life sentence without parole is disproportionate to the crime, constituting cruel and unusual punishment.

  **Ground 6**: Trial judge committed reversible error in granting an abstract

instruction on examples of direct and circumstantial evidence.

**Ground 7**: Ineffective assistance of counsel.
1. Failure to investigate.
2. Failure to call witness.

**Ground 8**: Trial judge erred in constructively amending the indictment.

**Ground 9**: Trial court committed reversible error in allowing state to present S-11 as evidence, violating Jenkins' right to confrontation.

**Ground 10**: Trial court erred in denying Jenkins' right to effective assistance of counsel, after a lack of communication, interest, or preparation that resulted in a conflict of interest.

## Discussion

Judgment in this governed by the standard set forth in 28 U.S.C. § 2254(d) and § 2254(e)(1). In order to grant relief, the court must conclude that the State's adjudication of the claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 120 S.Ct. 1495 (2000), the United States Supreme Court concluded that:

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In other words, it is not enough that the state court decision applied the law erroneously or incorrectly. The application of the principle must be unreasonable. *Id.* at 1522. The district court must ask whether the state court's application of the principle was objectively reasonable,

not whether all reasonable jurists would agree the state court made an incorrect decision. *Id.* at 1521.

Even so, under § 2254(d)(2), grounds may still merit review if those facts to which the appellate courts applied the law were determined unreasonably in light of the evidence presented. Because the state appellate courts are presumed to have determined the facts reasonably, it is Jenkins' burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As will be discussed below, Jenkins fails to meet this burden.

Exhaustion of all claims in state court under 2254(b)(1) before requesting federal collateral relief is a prerequisite to federal *habeas corpus* relief under 28 U.S.C. § 2254. *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir.), cert. denied, 116 S.Ct. 115 (1996) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). The exhaustion rule requires a petitioner to have presented the substance of his claims to the state courts. *Sones v. Hargett*, 61 F.3d 410, 414-15 (5th Cir. 1995) (citing *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir. 1983)). This doctrine gives state courts the first opportunity to review federal constitutional issues and correct any errors made by the trial courts, minimizing friction between the federal and state systems of justice. *Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989) (quoting *Rose*, 455 U.S. at 518) (citations omitted)). A federal court may not grant federal *habeas corpus* relief on an unexhausted claim, but relief may be denied on an unexhausted claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of *habeas corpus* may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Mercadel v. Cain*, 179 F.3d 271, 276 (5th Cir. 1999).

### Grounds One Through Six: Procedural Bar

Jenkins did not exhaust Grounds One, Two, Three, Four, Five, or Six in state court, and

the deadline to do so has expired. Jenkins failed to timely file a petition for write of certiorari pursuant to Mississippi Rule of Appellate Procedure 17. Jenkins' claims are procedurally defaulted for purposes of federal *habeas corpus* relief. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

"[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, . . . there is a procedural default for purposes of federal habeas . . . ." *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991).

The court may not apply a procedural default automatically because a petitioner may show why it should not be used in a certain situation. However, in order to receive federal *habeas corpus* review of procedurally defaulted claims, Jenkins must demonstrate "'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 749-50 (internal citations omitted).

Federal *habeas corpus* review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in fundamental miscarriage of justice. *Id.* at 751. Jenkins has shown neither cause for his default nor prejudice arising from application of it. Issues One through Six, then, fail as a matter of law.

The final means of avoiding a procedural bar is the fundamental miscarriage of justice exception to the general cause and prejudice test. *Lott v. Hargett*, 80 F.3d 161, 166 (5th Cir. 1996) (quoting *Coleman*, 501 U.S. at 751). "This exception applies in an extraordinary case,

where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Lott*, 80 F.3d at 166 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (holding that ineffective assistance of counsel can be cause for a procedural default)).

Jenkins has neither alleged nor proved that he is actually innocent of the crimes of his conviction. As such, his grounds for relief in Grounds One, Two, Three, Four, Five, and Six must be dismissed as procedurally barred.

### Grounds Seven and Ten: Ineffective Assistance of Counsel

To merit *habeas corpus* relief on a claim of ineffective assistance of counsel, a *habeas corpus* petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires both constitutionally deficient performance by counsel and actual prejudice as a result of this ineffective assistance. *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing *Strickland* standard of review). If a petitioner fails to establish either element of the *Strickland* test, the court must reject his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Jacksonburn*, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds).

In order to show deficient performance by counsel, a petitioner must demonstrate that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be considered in light of the services rendered at the time, rather than through retrospective distortion. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). "Our scrutiny of counsel's performance is 'highly deferential' and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct of the counsel's perspective at the time.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Counsel's services are not evaluated in isolation; the court must consider

all circumstances in determining whether performance was reasonable under prevailing professional standard. *Lavernia*, 845 F.2d at 498. Finally, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 817 (5th Cir. 1986).

Counsel's performance is deficient if "it falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. The court must determine whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). In other words, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). In scrutinizing counsel's performance, the court must not evaluate the claim with the crystal clarity of hindsight, should not assume a deficiency merely because the court might have chosen a different trial strategy than that used by counsel. *Id.*

To prove prejudice under the second prong of *Strickland,* a petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), cert. denied, 476 U.S. 1143 (1986). Finally, there is no constitutional entitlement to error-free representation. *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981), *cert. denied*, 466 U.S. 949 (1982).

In Grounds Seven and Ten, Jenkins argues that his attorney's performance was deficient because: (1) counsel allegedly failed to investigate, (2) counsel failed to communicate with Jenkins about his case, and (3) counsel chose not to call certain witnesses. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how this information would have altered the outcome of

the trial. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982); *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986); *Alexander v. McCotter*, 775 F.2d 595, 602-03 (5th Cir. 1985). Jenkins argues that an investigation might have revealed a break in the chain of custody regarding the gray shirt. However, the record shows that the shirt was in the possession of Jenkins, then the jail, the courthouse where it was used as evidence. SCR, Vol. 3, p. 168-171. Jenkins has not shown a broken link in the chain of custody of the shirt. As such, his claim that counsel was deficient in failing to investigate this issue must fail.

Jenkins also claims that counsel should have communicated with him more often. He does not establish how such communication would have affected his defense or the outcome of the case. In other words, Jenkins has not shown that he suffered prejudice due to insufficient communication with his attorney as alleged in the present petition. Thus, again, Jenkins has not met the requirements to prove ineffective assistance of counsel under *Strickland*.

In addition, Jenkins claims that counsel should have called additional witnesses: Marcus McCollough and three unnamed witnesses who were present and sworn in to testify. In addition, Jenkins argues that counsel should have called as a witness Officer Hite, the person charged with the safekeeping of the lockers containing prisoner belongings). Jenkins does not, however, set forth what testimony the uncalled witnesses might have given – or how such testimony might have helped his case.

A complaint about an uncalled witness is viewed with extreme caution during federal *habeas corpus* review as the potential testimony of that witness would be speculative, especially when the only evidence of a missing witness's testimony is from the petitioner. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Jenkins has not shown how counsel was deficient in his decision not to call the witnesses Jenkins wished to be called; nor has he proven that his case was prejudiced by these witnesses' not testifying. There is no support for a holding

that there is a "reasonable probability" that, had his defense attorney called additional witnesses, Jenkins' case would have been decided differently. The Mississippi Supreme Court did not err in denying Jenkins' claims of ineffective assistance of counsel, and this ground for relief in the instant petition will be denied.

### Ground Eight: Jury Instructions C-12, C-13, and C-14 Amounted to an Amendment of the Indictment

In Ground Eight, Jenkins claims that the trial judge erred in permitting his indictment to be amended. Specifically, Jenkins complains that jury instructions C-12, C-13, and C-14 (all of which are "lesser included offense" instructions) effectively amended his indictment (which charged that Jenkins possessed greater than two grams, but less than ten grams of cocaine).[1] These instructions all set forth the standard for finding a criminal defendant guilty of a lesser included offense – in this case, possession of a lesser amount of drugs than that charged in the indictment. Jenkins claims that the lesser included offense instructions contradicted instructions C-4, C-5, and C-9 given by the court. It does not appear that the trial court gave jury instructions numbered C-4 or C-5, but the trial court did give instructions C-4A and C-5A (which set forth the proper standard concerning the presumption of innocence and the burden of proof in a criminal case). Jury instruction C-9 set forth the elements the crime charged (possession of cocaine in an amount greater than two grams and less than ten grams).

A challenge to jury instructions does not form a basis for federal *habeas corpus* relief unless a petitioner establishes that the jury may have applied an improper instruction in such a way it prohibited the admission of constitutionally relevant evidence. *Boyde v. California*, 494 U.S. 370, 380 (1990). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's

---

[1] The amount of marijuana is not an issue in this petition.

judgment is even greater than the showing required to establish plain error on direct appeal."
*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A petitioner must demonstrate that the allegedly erroneous instruction so infected the entire trial, the resulting conviction violates his right to due process. *Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999) citing *Henderson, supra*.

Decarlos Jenkins has not shown that the instructions given were erroneous; as such, he has not demonstrated that his right to due process was violated by the jury instructions given. Therefore, the Mississippi Supreme Court's resolution of this issue was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law.

### Ground Nine: Introduction of the Gray Shirt Into Evidence

In Ground Nine, Jenkins complains that the court improperly permitted the state to introduce Exhibit S-11, the gray shirt Jenkins wore when he was arrested. Rulings of state courts on evidence are solely matters of state law, because a state prisoner is entitled to federal relief only if he is held "in violation of the Constitution or laws or treaties of the United States." *Engle v. Issac*, 456 U.S. 107, 118 (1981). A mere error of state law is not a denial of due process, otherwise "every erroneous decision by a state court on state law would come [to federal court] as a federal constitutional question." *Id.* at 121 n.21 (citations omitted). Even if prejudicial evidence is erroneously admitted into the record, it still does not justify *habeas corpus* relief unless the evidence in question played a "crucial, critical, and highly significant" role in a jury's determination of a defendant's guilt. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).

The gray shirt did not play a necessary (much less crucial, critical, or highly significant) role in Jenkins' conviction for possession of cocaine and marijuana. Three officers testified that Exhibit S-11 was the shirt that Jenkins was wearing the night he was apprehended and that it was the same shirt officers searched in which they found the cocaine and marijuana. *Jenkins v. State*,

997 So. 2d at 213. Jenkins cross-examined the witnesses regarding their recollection of the shirt, and he even testified that he had worn a gray shirt to a job interview earlier that day. *Id*. The shirt was removed from Jenkins' inmate bin at the jail and brought to trial, where the circuit court admitted it into evidence. *Id*. In addition, through logs and testimony, the state accounted for each link in the chain of custody of the gray shirt. The state presented sufficient evidence to show that Jenkins, indeed, wore the gray shirt in which the police found cocaine and marijuana.

In any event, the gray shirt was not necessary evidence to sustain Jenkins' conviction. It was simply the clothing he was wearing when the law enforcement officers found the drugs on his person. When the police searched the home of Jenkins' mother, they found various documents easily identifiable as belonging to Jenkins on the headboard of a bed in the house. They also found crack cocaine and marijuana on the same headboard. Further, the police found manual scales, Jenkins' work identification badge, and Jenkins' identification card in the bedroom. Jenkins listed the address of his mother's home (the home that was searched) on an official State of Mississippi identification card he kept in his pants pocket. As such, the state introduced evidence to prove that, despite his protestations to the contrary, he actually lived at the house searched. Police also found marijuana in a plastic bag behind the refrigerator in the kitchen – the place where Jenkins was apprehended. Officers testified that Jenkins had both marijuana and cocaine on his person when he was apprehended, and more drugs were found either lying around the room where it appeared that Jenkins lived – or hidden within the house. Scales and a collection of small plastic bags – tools of the drug trade – were also found in the quarters where Jenkins obviously lived. Neither Jenkins nor his mother could explain where the drugs, Ziploc bags, and scales came from. As such, even without the gray shirt, the state introduced ample evidence to support Jenkins' conviction based upon either his actual

possession of the drugs found on his person – or his constructive possession of the drugs found in his bedroom and about the house. Thus, Jenkins has not shown that the admission of S-11 into evidence violated a specific constitutional right or played a highly significant role in the jury's determination of his guilt. Therefore, the petitioner's claim for relief in Ground Nine of the instant petition will be denied.

## Conclusion

DeCarlos Jenkins did not pursue Grounds One, Two, Three, Four, Five, or Six in his petition for *habeas corpus* relief to conclusion in the Mississippi Supreme Court. He has thus defaulted these claims. He has demonstrated neither cause for the procedural default nor clear and convincing evidence of actual innocence. He has not shown cause under the cause and prejudice test to permit this court to reach the merits of these claims despite the procedural bar, and he has not proved that an external impediment prevented him from exhausting these claims. Furthermore, there will be no fundamental miscarriage of justice if Jenkins' claims are not heard on the merits because he has not presented any proof of his actual innocence. Grounds One through Six of the instant petition will therefore be dismissed.

Regarding the rest of Jenkins' claims, 28 U.S.C. § 2254(d) requires federal courts defer to state court decisions on claims adjudicated on the merits in state court. The Mississippi Supreme Court's determination that Jenkins was not entitled to relief neither "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" nor "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1); *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. Tex. 2000). Accordingly, the court denies federal *habeas corpus* relief, and the

instant petition will be dismissed with prejudice.

**SO ORDERED**, this the 14th day of December, 2010.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE